This document was signed electronically on March 26, 2020, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: March 26, 2020



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re | ) |
| | ) Case No. 16-52757 |
| THE R.C.A. RUBBER COMPANY, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) Adversary Proceeding No. 18-05077 |
| | ) |
| ANDREW SUHAR, Trustee, | ) Judge Alan M. Koschik |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PENSION BENEFIT GUARANTY CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM DECISION GRANTING, IN PART, THE PBGC'S MOTION TO DISMISS AS TO COUNTS I, II, AND V OF THE COMPLAINT, AND SETTING THE <u>MOTION FOR ORAL ARGUMENT AS TO COUNTS III AND IV</u>**

Now before the Court is defendant Pension Benefit Guaranty Corporation's ("PBGC" or "Defendant") motion to dismiss (Docket No. 11) (the "Motion") the amended complaint (Docket No. 10) (the "Complaint") of plaintiff-trustee Andrew Suhar ("Trustee" or "Plaintiff") for failure to state a claim on any of its five counts in the above-captioned adversary proceeding.

For the reasons set forth herein, the Motion will be granted in part, specifically as to Counts I, II, and V of the Complaint. The Court will not rule on the Motion with respect to Counts III and IV, and will instead schedule those for oral argument.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (K).

## FACTUAL AND PROCEDURAL HISTORY

The procedural history herein is recounted from the Court's docket and from hearings conducted in the main case. With respect to the factual history, the Court will, as it must on a motion to dismiss for failure to state a claim, accept as true all factual allegations made in the Complaint and construe those allegations in the light most favorable to the Plaintiff. In most material respects, the factual background described in the Complaint and the Motion are consistent.

Debtor The R.C.A. Rubber Company (the "Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code on November 18, 2016 (the "Petition Date"). Well before that date and continuing after that date during the pendency of the chapter 11 proceeding, the Debtor sponsored a single-employer defined benefit pension plan covered by Title IV of the

Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. (the "Pension Plan").

For many years prior to the filing of its bankruptcy case—the PBGC alleges between 2012 and 2016, but many years in any event—the Debtor failed to make "minimum funding contributions," an ERISA term of art, to the Pension Plan.

On October 24, 2016, less than a month prior to the Petition Date, PBGC filed a Notice of Federal Lien under I.R.C. § 430(k), asserting a statutory lien (the "PBGC Lien") in the amount of $1,079,138 against the Debtor for the past due unpaid minimum funding contributions, plus interest.

The Debtor continued to operate its business as debtor-in-possession from the petition date until April 16, 2018, when Andrew W. Suhar (the "Trustee") was appointed chapter 11 trustee. (*See* Docket No. 180.) The Trustee served as the chapter 11 trustee for less than a month. However, during the brief time when the Trustee was in place in the chapter 11 case, the Trustee sold the assets of the estate as a going concern. Two days after his appointment as chapter 11 trustee, on April 18, 2018, the Trustee filed a motion, pursuant to 11 U.S.C. § 363(f), to sell substantially all of the assets of the Debtor free of liens, claims, and encumbrances, and to reject all associated executory contracts and unexpired leases pursuant to 11 U.S.C. § 365(a) (Docket No. 184) (the "Sale Motion"). The Court granted the Sale Motion on April 27, 2018. (Docket No. 206.) The Trustee filed a report of sale on May 4, 2018, stating that the assets of the debtor sold for a gross price of $746,500 net of settlement charges to the seller, and that these proceeds are being held by the Trustee pending further order of this Court. (Docket No. 212.) The assets sold did not include cash or accounts receivable, which the Trustee continued to

3

collect.  The Trustee filed an interim report on April 24, 2019, showing approximately $1.4 million in cash on hand.  (Docket No. 362.)

The case was converted to chapter 7 of the Bankruptcy Code on May 9, 2018 (*see* Docket No. 217), and the Trustee continued as the chapter 7 trustee (*see* Docket No. 218).

On October 1, 2018, the Trustee and PBGC executed an Agreement for Appointment of Trustee and Termination of Plan, terminating the Pension Plan with a termination date of April 27, 2018.

On October 15, 2018, the PBGC filed its Amended Proof of Claim No. 11 asserting a secured claim against the estate in the amount of $1,079,138 for the unpaid minimum funding contributions (the "MFL Claim").

On October 15, 2018, the PBGC also filed its Amended Proof of Claim No. 12 asserting an unsecured claim against the estate in the amount of $4,247,035 for unfunded benefit liabilities arising from the termination of the Pension Plan ("UBL Claim").

On November 8, 2018, the Trustee commenced this adversary proceeding against the PBGC.  The PBGC filed the Motion on December 12, 2018.  The Trustee moved for an extension of time to respond, which the Court considered at a pretrial conference on January 9, 2019, and granted via order entered January 18, 2019.  The Trustee filed his response on February 15, 2019 (Docket No. 16) (the "Response").  The PBGC filed its reply in support of its Motion on March 15, 2019 (Docket No. 17) (the "Reply").

The Court took the matter under advisement at the close of briefing.

4

18-05077-amk    Doc 20    FILED 03/26/20    ENTERED 03/26/20 14:55:57    Page 4 of 15

## LEGAL ANALYSIS

Federal Rule of Civil Procedure 12(b)(6), incorporated into bankruptcy practice by Federal Rule of Bankruptcy Procedure 7012(b), allows a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.E.2d. 868 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S.C. 544, 570, 127 S.Ct. 1955 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." *In re City of Detroit, Michigan*, 841 F.3d 684, 699 (6th Cir. 2016) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). "On the other hand, when considering a Rule 12(b)(6) motion to dismiss, the trial court must 'construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.'" *Adkisson v. Jacobs Engineering Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (quoting *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014)).

The complaint states five separate claims for relief:

Count I seeks to avoid the PBGC Lien as a preferential transfer pursuant to 11 U.S.C. § 547.

Count II seeks a declaratory judgment, based on the Trustee's interpretation of 11 U.S.C. § 552, that the PBGC Lien did not and does not attach to accounts receivable and inventory

5

acquired by the Debtor postpetition and later liquidated by the Trustee, the proceeds of which the Trustee still holds.

Count III seeks a declaratory judgment, under applicable provisions of ERISA and the Internal Revenue Code, that either (i) the MFL Claim was a subset of the UBL Claim, which did not arise until the termination of the Pension Plan, and therefore the PBGC Lien was an "inchoate lien" that was unenforceable, or (ii) the PBGC Lien is limited to 30% of the net value of the Debtor as of the plan termination date.

Count IV seeks to surcharge the PBGC Lien pursuant to 11 U.S.C. § 506(c) for certain costs of chapter 11 administration of the estate, and also a declaratory judgment that the PBGC Lien is a tax lien that is subordinate to the chapter 7 administrative expense claims against the Debtor's estate pursuant to 11 U.S.C. § 724.

Count V suggests the existence of unnamed "other entities" that may be responsible for some or part of the amount due to satisfy the PBGC Lien, and that the Trustee is therefore entitled to marshal the PBGC Lien.

Counts I, II, and V of the Complaint suffer from legal infirmities that make them untenable based on the facts alleged by the Trustee in his Complaint and the facts apparent from the record in the underlying case. Therefore, the Court will dismiss those counts for failure to state a claim. However, the Court is not yet prepared to rule on Counts III and IV given the briefing before it. The Court will hold oral argument to determine whether those counts should survive the Motion.

**A. The PBGC Lien Is a Statutory Lien, Not Alleged To Be Avoidable Pursuant to 11 U.S.C. § 545, and Therefore Is Excepted from Avoidance as a Preferential Transfer Pursuant to 11 U.S.C. § 547(c)(6).**

Count I of the Complaint seeks to avoid the PBGC Lien as a preferential transfer pursuant to 11 U.S.C. § 547. Indeed, the PBGC Lien transferred an interest in the Debtor's

6

property to the PBGC causing its alleged claim to become secured, instead of unsecured, during the ninety (90) days prior to the Petition Date.

However, the PBGC argues that a defense applies to this claim. Section 547 of the Bankruptcy Code does not allow a trustee to avoid an otherwise-preferential transfer that constitutes "the fixing of a statutory lien that is not avoidable under section 545 of [the Bankruptcy Code]." 11 U.S.C. § 547(c)(6). A "statutory lien" is a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). The parties agree that the PBGC Lien arose pursuant to 26 U.S.C. § 430(k) and not due to agreement or judicial action. It is a statutory lien and the Trustee appears to concede this point. The transfer resulting from the fixing or attachment of the PBGC Lien does not appear to be avoidable under Section 545 of the Bankruptcy Code, and the Trustee in his Complaint does not seek to avoid it on such ground.

Instead, the Trustee argues that it is not the *fixing* of the PBGC Lien the Debtor seeks to avoid, but rather the *perfection* of that lien. The Trustee argues that (i) the fixing and perfection of a statutory lien are distinct; (ii) Section 547(c)(6) only offers a defense to the avoidance of the fixing of such a lien as a preference; and that therefore (iii) the Trustee can avoid the perfection of the PBGC Lien as a preference, leaving only an unperfected lien inferior to his statutory strong-arm powers pursuant to 11 U.S.C. § 544. The Trustee cites *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), for the distinction between fixing and perfection. *Farrey*, construing another lien-avoidance power in the Bankruptcy Code that also focuses on the "fixing" of such liens, 11 U.S.C. § 522(f)(1), held that that provision "requires a

7

debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." *Id.* at 301. It holds that to "fix" means to "fasten a liability upon," *id.* at 296, and refers to a specific moment in time rather than a continuing state of existence. *Farrey* does not expressly mention perfection. *Farrey* instead concerns the question, irrelevant here, of whether a debtor can avoid, pursuant to Section 522(f), a judicial lien that attached to the property before the debtor had an interest in the property.

There is indeed a fundamental distinction between the fixing and perfection of a lien, but the Trustee mischaracterizes the distinction as it applies to actions to avoid preferential transfers. The operative transfer avoidance provision, 11 U.S.C. § 547(b), only authorizes the avoidance of "transfers." The Bankruptcy Code defines a "transfer" as "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode … of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54).

Perfection is not a separate transfer of an interest in property. It is the means by which a transferee secures superior rights in the transferred property relative to the rights of competing third parties. When the transferor files bankruptcy, those competing third parties include the transferor's bankruptcy trustee (or the transferor itself as debtor-in-possession) who acquires the avoidance powers of a judgment lien creditor pursuant to 11 U.S.C. § 544(a). Perfection of a transfer is important, but it is not itself a further or second transfer.

To "perfect" means "to take all legal steps needed to complete, secure, or record (a claim, right, or interest); to provide necessary public notice in final conformity with the law." Black's Law Dictionary (11th ed. 2019). Thus, for example, when a creditor avails itself of the exception to the automatic stay in 11 U.S.C. § 362(b)(3) to perfect a previously unperfected prepetition

8

transfer after the commencement of the case, which is permitted under certain circumstances, it does not acquire new rights or interests as against the debtor. *See In re 229 Main Street Ltd. Partnership*, 262 F.3d 1, 8 (1st Cir. 2001) (citing 3 Collier on Bankruptcy ¶ 362.05[5] (Lawrence P. King ed., 15th ed. rev. 2001). Instead, upon perfection, a transferee ensures its relative place in line as against other creditors of the debtor or other parties claiming an interest in the property.

The Bankruptcy Code's provision governing avoidance of preferential transfers considers a creditor's perfection of a lien or of a deed when defining the limits of a bankruptcy trustee's avoidance powers. A transfer of real property other than fixtures is perfected "when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). "[A] transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). The key significance of perfection for purposes of avoiding a preferential transfer is that it can retroactively affect the date the transfer itself is deemed to have occurred. *See* 11 U.S.C. § 547(e)(2). This is important because Congress imposes strict reachback periods for avoiding transfers as preferences. 11 U.S.C. § 547(b)(4) (generally 90 days prior to the bankruptcy filing, but one year in cases where the creditor has an insider relationship with the debtor).

While Section 547(e) defines the date of the transfer for purpose of a trustee's avoiding power, it cannot be fairly read to suggest that perfection is itself a transfer. Moreover, the term "perfection" is absent from 11 U.S.C. § 547(c)(6)[1] not because an act of perfection can be avoided, but rather because Section 547(b) avoids only preferential *transfers*, not preferential

---

[1] The word "perfection" also does not appear in 11 U.S.C. § 545.

9

perfection.  Perfection is not a separate type of transfer, so there would have been no purpose to include it in the types of transfers excepted from avoidance.

The Trustee also argues that "fixing" is different from "transfer" and that Section 547(b) refers to avoiding a "transfer," not the "transfer or fixing" of a lien.  (Resp. at 7.)  However, a plain reading of the Code demonstrates that the "fixing" of a lien is a type of "transfer."  A transfer is defined to include "the creation of a lien."  11 U.S.C. § 101(54).  Indeed, if the rule were otherwise, there would be no need to except from transfer avoidance the fixing of such liens in Section 547(c)(6).

The Court agrees with the holding in *Spicer v. I.R.S. (In re Motion Marketing Sols., Inc.)*, 403 B.R. 403 (Bankr. N.D. Tex. 2009), that if a "statutory lien is not one avoidable under section 545, it is outside of the trustee's power to avoid as a preferential transfer by reason of section 547(c)(6)." *Id.* at 409.  "Congress intended statutory liens to be voidable, if at all, under section 545; section 547(b) was not meant to provide a trustee with an alternative theory for attacking statutory liens." *Id.* at 411.  While this Court's reasoning to reach that conclusion is somewhat different than *Spicer's*—*Spicer* held that "fixing of a statutory lien" in section 547(b)(6) includes acts to perfect such liens, while this Court concludes that perfection alone is not a "transfer"—the end result is the same.  The PBGC Lien cannot be avoided as a preferential transfer pursuant to 11 U.S.C. § 547.

Therefore, Count I of the Complaint fails to state a claim on which relief can be granted and will be dismissed.

**B.     Section 552 of the Bankruptcy Code Does Not Apply to Statutory Liens.**

Count II of the Complaint seeks a determination that the PBGC Lien does not apply to assets of the estate acquired postpetition, specifically inventory and accounts receivable, because the Debtor never granted the PBGC a replacement lien as adequate protection in exchange for

10

the use of cash collateral. *See* 11 U.S.C. § 363(c)(2). Section 552(a) of the Bankruptcy Code provides that "… property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). However, the PBGC Lien does not result from any security agreement. A "security agreement" is an "agreement that creates or provides for a security interest." 11 U.S.C. § 101(50). A "security interest" is a "lien created by an agreement." 11 U.S.C. § 101(51). The PBGC Lien was not created by an agreement. It was created by a statute. "Because it is grounded in the Bankruptcy Code's definition of 'security interest' … subsection (a) is confined to consensual liens and does not extent to nonconsensual or statutory liens." 5 Collier on Bankruptcy ¶ 552.01[2] (Richard Levin & Harry J. Sommer eds., 16th ed.). *See also In re Wampler*, 345 B.R. 730, 742 (Bankr. D. Kan. 2006) ("Since the IRS does not hold a consensual lien, § 552(a) does not prevent a properly perfected IRS lien to continue to attach to postpetition assets of the debtor or the estate."); *In re Southeast R.R. Contractors, Inc.*, 235 B.R. 619, 622 (Bankr. E.D. Tenn. 1996) ("tax liens generally survive bankruptcy and, being nonconsensual, are not cut off by the operation of 11 U.S.C. § 552(a)"); *In re Sanglier*, 124 B.R. 511, 514 (Bankr. E.D. Mich. 1991) ("Although § 552 provides generally that pre-petition liens are ineffective against property acquired post-petition, that section applies only to consensual liens; it simply does not speak to the post-petition validity of involuntary liens.").

In response to the Motion, the Trustee argues or suggests that the references to Section 545 in Section 552(b) expand the reach of Section 552(a) and allow it to apply to statutory liens. However, the cross-reference to Section 545 serves a different and much more limited purpose:

> On rare occasions, a secured party's collateral will be subject to the trustee's avoiding power under section 545. Of course, a security interest is not itself a

11

> statutory lien. But there may be a statutory lien avoidable under section 545 that encumbers the collateral and is prior to the security interest. If so, the avoided statutory lien is automatically preserved for the benefit of the estate ahead of the security interest both as to the collateral and as to proceeds.

5 Collier on Bankruptcy ¶ 552.02[5][c] (Richard Levin & Harry J. Sommer eds., 16th ed.).

The Trustee attempts to support his expansive reading of Section 552 by citing to Section 362, noting that by default, that section prevents "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). In other words, the Trustee argues that allowing a prepetition lien, including a statutory lien, to attach to property the estate acquires postpetition would violate the automatic stay. He then argues that "Section 552 is an exception to the general rule that liens against the debtor do not automatically attach to assets of a bankruptcy estate." (Resp. at 8.) By the Trustee's argument, the real meat of Section 552 is subsection (b), which *allows* prepetition security interests to continue in effect postpetition as to proceeds of prepetition collateral. The Trustee contends that Section 552(a) merely reiterates a general rule created by Section 362(a)(4), which stays "any act to create, perfect, or enforce a lien against property of the estate."

The Trustee's argument, which appears to arise for the first time in his Response to the Motion, not in his Complaint, depends upon a convoluted reading of Section 552, considering its lack of any reference to Section 362. If Section 362(a)(4) already stayed all postpetition effect of every prepetition lien on property a debtor acquires after its bankruptcy filing, there would be no need for Section 552(a). Section 552 could simply begin with what is currently Section 552(b), and would likely add "notwithstanding section 362 …". Moreover, Section 362(a)(4) does not appear to address the scope of prepetition liens and their attachment to assets acquired by the bankruptcy estate after commencement of the case, as the Trustee suggests. Rather, it simply

prohibits postpetition acts to create liens, perfect liens, or enforce liens, not the attachment of existing liens to property acquired postpetition if otherwise permitted by law.

The Trustee's argument gets the law backward. Section 552 is an exception to the general rule that prepetition liens against the debtor *do* attach to property of the bankruptcy estate. Voluntary liens attach to property acquired postpetition only to the extent permitted by Section 552(b). Involuntary liens, by contrast, attach based on the governing nonbankruptcy law. For example, in *Peaje Investments, LLC v. The Financial Oversight and Management Bd. for Puerto Rico (In re Financial Oversight and Management Bd. for Puerto Rico)*, 899 F.3d 1, 7-8 (1st Cir. 2018), while the court held that the appellant creditor did not have a statutory lien on toll revenues of the Puerto Rico transit authority—which would clearly have been postpetition-acquired property—the court implicitly acknowledged that the creditor would have had lien rights in such postpetition revenues if it had a statutory lien, although those rights might have been subject to limitations imposed by chapter 9 of the Bankruptcy Code that are not relevant here. *See id.* at 7-8. Section 552 does not invalidate the continued attachment of the PBGC Lien to property acquired by the Debtor after it filed its petition.

Therefore, Count II of the Complaint fails to state a claim upon which relief can be granted and must be dismissed.

**C.**     **The Complaint Has Not Plausibly Alleged the Existence of Any Co-Obligors Obligated on the PBGC's Claims That Are Secured by the the PBGC Lien.**

Count V of the Complaint alleges: "Other entities may be responsible for the payment of some or all of the amount due under the PBGC Lien. Therefore, the trustee is entitled to marshal the PBGC lien." (Compl. ¶ 35.) However, the Trustee does not allege whether such other entities actually exist or identify who such entities are. He does not plead any facts that would inform the PBGC as Defendant which entities the Trustee is referring to, or what other property

13

might be encumbered by the PBGC Lien to which the PBGC could be directed as a primary source of recovery if the marshaling argument proved meritorious. The Court concludes that this falls short of the minimum pleading requirements mandated by the Supreme Court in *Iqbal* and *Twombly*, without reaching the issue of whether marshaling might be proper under some circumstance. There does not appear to be anything to marshal. Further, to the extent such entities do exist, the Complaint should have made them defendants in this action, just as a foreclosure complaint will generally name as defendants all those who might have an interest in the property at issue. The PBGC might have been able to name such entities as defendants via a third-party complaint if the Trustee had identified them, but he has not.

Count V also alleges, perhaps separately, that the PBGC may be required to answer or file a responsive pleading to the Complaint or be forever barred from asserting any claim, exemption, encumbrance or other interest in the assets of the bankruptcy estate or proceeds received from the sale thereof. However, the PBGC has filed its two proofs of claim, the MFL Claim and the UBL Claim. Those claims are *prima facia* valid unless and until successfully objected to. No objection to those claims has been filed and no such claim objection is contained in the Complaint.

The Trustee's Response does not offer any counterargument to the Motion on Count V.

Therefore, Count V fails to state a claim upon which relief can be granted, and will be dismissed.

**D.      The Court Is Not Yet Prepared To Rule on the Motion With Respect to Counts III and IV of the Complaint.**

The briefing by the parties on Counts III and IV of the Complaint, regarding the applicability of various provisions of ERISA concerning the PBGC's claims at various points in time, the validity of and date of attachment of the PBGC Lien, and the impact of the UBL Claim

14

or the MFL Claim and PBGC Lien, as well as the Trustee's right to surcharge and/or subordinate the PBGC Lien pursuant to 11 U.S.C. §§ 506(c) and 724, is interesting. These claims may be viable, or perhaps may not be, as a matter of law. However, the Court concludes that oral argument would be beneficial to resolve the Motion with respect to those two counts of the Complaint.

## CONCLUSION

Count I of the Complaint will be dismissed because the PBGC Lien is a statutory lien that could only be avoided pursuant to 11 U.S.C. § 545, if at all, not as a preferential transfer pursuant to 11 U.S.C. § 547 as alleged by the Trustee in the Complaint.

Count II of the Complaint will be dismissed because 11 U.S.C. § 552 only restricts the postpetition effect of consensual liens, not nonconsensual statutory liens such as the PBGC Lien.

Count V of the Complaint will be dismissed for failure to state a claim because it does not plead sufficient facts to support or describe a claim upon which relief can be granted.

The Motion to Dismiss Counts III and IV of the Complaint will be scheduled for oral argument after consultation with counsel. The Clerk will enter a separate notice of the oral argument.

The Court does not intend to enter a separate order granting the PBGC's Motion to Dismiss, in part, as to Counts I, II, and V, consistent with this Memorandum Decision, until at the earliest it has ruled on the Motion as to Counts III and IV following oral argument.

# # #